**Anthony S. Petru** (CA #91399)
petru@hmnlaw.com
**Gavin Barney** (OR # 163382)
barney@hmnlaw.com
HILDEBRAND MCLEOD & NELSON
350 Frank H. Ogawa Plaza, 4th Floor
Oakland, CA 94612
Tel: (510) 451-6732

**James H. Kaster\*** (MN #53946, WI # 1001474)
kaster@nka.com
**Lucas J. Kaster\*** (CA # 291102)
lkaster@nka.com
NICHOLS KASTER, PLLP
4700 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Tel:  (612) 256-3200
*\*admitted pro hac vice*

Attorneys for Plaintiff Nicholas DeFries

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| NICHOLAS DEFRIES,<br><br>    Plaintiff,<br><br>vs.<br><br>UNION PACIFIC RAILROAD COMPANY, a Delaware Corporation,<br><br>    Defendant. | Case No. 3:21-cv-00205-SB<br><br>FIRST AMENDED COMPLAINT FOR DAMAGES<br><br>JURY TRIAL DEMANDED |

Plaintiff Nicholas DeFries ("DeFries") files this Complaint against Defendant Union Pacific Railroad Co. ("Union Pacific" or "Defendant") for damages resulting from its violation of the Americans with Disabilities Act, 42 U.S.C § 12101 *et seq.*, as amended ("ADA").

1

FIRST AMENDED COMPLAINT FOR DAMAGES

## **PRELIMINARY STATEMENT**

1. Union Pacific enforces a company-wide fitness-for-duty program ("Fitness-for-Duty"), through which the company imposes a blanket policy automatically removing from service employees who disclose or who Union Pacific suspects have certain health conditions. Union Pacific then subjects employees whom it removes from service to a Fitness-for-Duty evaluation. Union Pacific applies this policy regardless of whether the employee has been safely performing the essential functions of their job. Union Pacific evaluations do not assess whether an employee is capable of safely or effectively performing their work.

2. Employees responsible for train movement must be certified by the Federal Railroad Administration ("FRA"). The FRA allows railroads to certify employees through one of twelve color-vision examinations, including the *Ishihara* test, which consists of a number of colored plates, each containing a circle of dots appearing randomized in color and size, that form a number or shape clearly visible to those without color-vision deficiency, and invisible, or difficult to see, to those who are color-blind or who have color-vision deficiency.[1] Because employees who have color-vision deficiency may nevertheless be able to distinguish between colors, the FRA permits them to be certified through a color-vision field test ("CVFT"). Even employees who the employer deems have not met the employer's requirement to pass a CVFT may be certified and the employee allowed to work when there is reason to believe that they can perform their job's essential functions.

---

[1] Color-vision deficiency is the inability to distinguish certain color shades under normal lighting condition: whereas, color blindness is the inability to see colors. Color-vision deficiency is relatively common, *e.g.*, one in twelve men suffer from red-green color vision deficiency. And unlike color blindness, color-vision deficiency does not prevent its sufferers from performing tasks that require them to distinguish between colors.

3. Because employees responsible for train movement must be certified, Union Pacific's Fitness-for-Duty includes color-vision testing. In or around April of 2016, Union Pacific replaced its CVFT with a new test – the "Light Cannon" test. The old CVFT used existing train signal masts with actual wayside lights and lenses in the field or railyards; whereas the Light Cannon test uses a mobile light device that Union Pacific developed in-house. The Light Cannon test does not replicate what employees see in the field, and yet the majority of those who have been subjected to it fail, despite having successfully passed the old CVFT and performed their jobs without missing a signal for years or even decades.

4. In February 2016, several Union Pacific employees commenced a class action disability discrimination lawsuit against Union Pacific, alleging that Union Pacific's Fitness-for-Duty policies and practices constituted a pattern and practice of discrimination under the ADA. *See Quinton Harris et. al. v. Union Pacific Railroad Company*, Case No. 8:16-cv-381 (D. Neb.). The *Harris*-plaintiff's allegations "clearly encompass vision testing as it is included in the FFD program." *Harris,* 2019 U.S. Dist. LEXIS 16113, at *10-11 (D. Neb. Feb 1, 2019).

5. DeFries is a victim of the same discriminatory Fitness-for-Duty policies and practices alleged in *Harris*. Despite each being qualified and safely performing his job without incident, DeFries was removed from service for a Fitness-for-Duty evaluation and excluded from work at Union Pacific on the basis of his real or perceived disability, which regards his ability to see color. DeFries was a putative class member in *Harris*, and now timely brings this action.

## JURISDICTION AND VENUE

6. This action arises under the Federal Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* As such, this Court has jurisdiction under 28 U.S.C. § 1331.

7. Venue is proper in the District of Oregon, Portland Division, because a substantial part of the events or omissions that give rise to this lawsuit occurred in the District and Division. 28 U.S.C. § 1391(b)(2); *see also* LR 3-2.

8. Venue is proper under 42 U.S.C. § 2000e-5(f)(3) because a substantial part of the alleged unlawful practices were committed by Union Pacific in the District of Oregon and because, but for the unlawful practices of Union Pacific, DeFries would have worked in the District of Oregon.

## THE PARTIES

9. DeFries resides in Union, Oregon. DeFries is an individual with a disability, as that term is defined under the ADA, who, at all times material to this lawsuit, was employed by Union Pacific in the State of Oregon.

10. Union Pacific is a railroad carrier engaged in interstate commerce.

## PROCEDURAL PREREQUISITES AND TIMELY FILING

11. On February 19, 2016, counsel for DeFries, on behalf of six named plaintiffs and those similarly situated, filed a First Amended Complaint against Union Pacific in the Western District of Washington, alleging disability discrimination in violation of the ADA, along with state law. The case was thereafter transferred to the District of Nebraska. *See Quinton Harris et al. v. Union Pacific Railroad Company*, Case No. 8:16-cv-381 (D. Neb.).

12. DeFries was a putative class member in the *Harris* case and DeFries' claims under the ADA were subject to tolling during the pendency of litigating the class-wide claims, pursuant to the Supreme Court's ruling in *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983).

13. The *Harris* court certified the class action in February 2019; however, the Eighth Circuit Court of Appeals reversed the certification decision on March 24, 2020.

14. As a result of *Crown Cork* tolling, DeFries had three hundred (300) days from the date of the Eighth Circuit's order to file a Charge of Discrimination with the Equal Employment Opportunity Commission, "EEOC." Shortly after the Eighth Circuit issued its order reversing class certification, the parties entered into a tolling agreement, extending the time for DeFries and other putative class members to file EEOC charges by an additional sixty (60) days.

15. DeFries timely filed a Charge of Discrimination with the EEOC on April 24, 2020. The EEOC issued a determination on November 17, 2020, requiring that DeFries file a complaint in court by February 15, 2021.

16. DeFries timely brings the present action.

## FACTUAL ALLEGATIONS

### *UNION PACIFIC'S FITNESS-FOR-DUTY POLICIES AND PRACTICES*

17. Union Pacific's Medical Rules outline its Fitness-for-Duty program. The rules require that certain employees, including all employees in Operating Department field positions (such as Transportation, Engineering Services and Mechanical positions), undergo a Fitness-for-Duty evaluation where they report or Union Pacific suspects that they have one of an enumerated list of medical and/or physical conditions.

18. When a Fitness-for-Duty evaluation is triggered, the employee is removed from work without pay while Union Pacific Health and Medical Services completes the evaluation and until Union Pacific informs the employee's supervisor that the employee has been cleared to return to work.

19. Union Pacific Fitness-for-Duty includes color-vision testing. Suspected color-vision deficiency triggers a Fitness-for-Duty evaluation.

20. FRA regulation requires that all locomotive engineers and conductors undergo

periodic certification. Under the fitness requirement, an engineer or conductor must have the ability to recognize and distinguish between the colors of railroad signals, as demonstrated through one of twelve forms of color-vision examination. Where an employee fails one of the listed examinations, FRA regulations state that an engineer or conductor may nonetheless be certified through a CVFT or where there is otherwise reason to believe that they can recognize and distinguish between colors of railroad signals.

21. Union Pacific utilizes the 14-Plate Ishihara test to test for color-vision deficiency for FRA certification. When an employee fails the Ishihara test, Union Pacific subjects the employee, as part of the Fitness-for-Duty process, to a CVFT implemented in or around April 2016, called the Light Cannon test.

22. The Light Cannon Test does not simulate real world conditions and does not assess the employee's ability to recognize and distinguish between colors of railroad signals.

23. As a result of the conduct described above, Union Pacific employees who have never had a problem performing the essential functions of their jobs have been removed from work without pay either for an extended period or indefinitely.

### *PLAINTIFF NICHOLAS DEFRIES*

24. DeFries was hired by Union Pacific in Oregon in July 2004, and worked as a conductor and brakeman until approximately March 2018 when he was removed from service.

25. As a conductor, part of DeFries' job entailed reading and interpreting multicolored railroad traffic signal lights on signal masts. DeFries safely worked as a conductor for nearly fourteen years without misreading a signal.

26. In 2004 Union Pacific administered DeFries an Ishihara color vision test. Union Pacific never informed DeFries of his test results, and DeFries was allowed to work as a conductor.

27. In March 2015, DeFries underwent FRA Conductor certification and failed the Ishihara Test. On or about March 26, 2016, DeFries took and passed a previous Union Pacific CVFT in which DeFries read and relayed a series of signals from a real railroad signal mast to assess his ability to read and interpret signals in the field. Union Pacific determined that DeFries "identified the signals in a normal manner and time frame."

28. On or about March 29, 2018, DeFries went to recertify as a conductor. He took and failed the Ishihara Test. On this occasion his test results triggered a Fitness-for-Duty evaluation and Union Pacific removed DeFries from work as a conductor.

29. On or about May 10, 2018, as part of the Fitness-for-Duty process, Union Pacific sent DeFries to a railyard in Portland, Oregon, for a field test. There, Union Pacific administered the Light Cannon test instead of the old CVFT. Union Pacific concluded that DeFries failed the Light Cannon test.

30. During the May 10 Light Cannon test, conditions became rainy and windy, and DeFries requested a retest.

31. On or about May 16, 2018, DeFries contacted Union Pacific return-to-work employee Kimberlee Foye and asked whether there were any other positions or crafts that Union Pacific could transfer him to in the event that Union Pacific determined that he failed the Light Cannon Test on his second attempt.

32. Soon thereafter Union Pacific administered DeFries the Light Cannon Test a second time. Union Pacific again concluded that DeFries failed the Light Cannon test.

33. On or about August 7, 2018, Union Pacific issued DeFries permanent work restrictions prohibiting him from working in any position requiring accurate identification of colored railroad wayside signals, including as a conductor. Union Pacific claimed that these

restrictions could not be accommodated.

34. Following his second Light Cannon Test and Union Pacific's issuance of work restriction, DeFries contacted Union Pacific on at least one more occasion to request that he be returned to work in different position.

35. In the time since removing him from service, Union Pacific has persisted in its refusal to allow DeFries to return to his job as a conductor/brakeman. At all times, DeFries was capable of performing the essential functions of his job, and he remains able to perform them today.

36. On information and belief, Union Pacific had and/or has one of more open jobs or positions in which DeFries could be returned to work despite the permanent work restrictions issued by Union Pacific.

37. To the extent that DeFries needed a reasonable accommodation, Union Pacific failed to provide them, and failed to even engage in an interactive process regarding what accommodations were possible.

## CAUSES OF ACTION

### COUNT I
### *VIOLATION OF THE ADA*
### *DISABILITY DISCRIMINATION – DISPARATE TREATMENT*

38. Plaintiff incorporates the foregoing paragraphs by reference.

39. The ADA defines a disability as (A) a physical or mental impairment that impairs one or more major life activities; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(1). An individual is regarded as having such an impairment if they are subjected to an action prohibited under the ADA "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to

limit a major life activity." 42 U.S.C. § 12102(1)(C).

40. At all relevant times, Union Pacific regarded DeFries as having an impairment and, therefore, DeFries was an individual with a disability under the ADA.

41. At all relevant times, DeFries had the requisite skill, experience, education, and other job-related requirements of his positions, and was therefore a qualified individual under the ADA.

42. At all relevant times, DeFries could perform the essential functions of his position, with or without reasonable accommodation.

43. Section 12112(a) of the ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

44. Discriminating against a qualified individual on the basis of disability under Section 12112(a) includes, among other things, "using qualification standards, employment tests or other selection criteria that screen out . . . an individual with a disability . . . unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position and is consistent with business necessity." 42 U.S.C. § 12112(b)(6).

45. Union Pacific discriminated against DeFries on the basis of a real or perceived disability in one or more of the following ways:

    a. Removing DeFries from service and issuing work restrictions on the basis of his disability;

    b. Failing to utilize alternate clinical tests to the Ishihara Test to determine whether DeFries can effectively read and interpret railroad signals;

  c. Using a field test that does not assess whether DeFries can effectively read and interpret railroad signals;

  d. Failing to otherwise assess whether DeFries is capable of reading and interpreting railroad signals; and

  e. Using a Fitness-for-Duty evaluation process that screens out qualified individuals with disabilities.

46. Because Union Pacific violated 42 U.S.C. § 12112, DeFries has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. DeFries is also entitled to attorneys' fees and costs incurred in connection with these claims.

47. Union Pacific committed the above-alleged acts with reckless disregard or deliberate disregard for DeFries' rights and safety. As a result, DeFries is entitled to punitive damages.

## COUNT II
### *VIOLATION OF THE ADA*
### *DISABILITY DISCRIMINATION – DISPARATE IMPACT*

48. Plaintiff incorporates the foregoing paragraphs by reference.

49. DeFries is a qualified individual with a disability within the meaning of the ADA.

50. Discriminating against a qualified individual on the basis of disability includes "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity[.]" 42 U.S.C. § 12112(b)(6).

51. Discriminating against a qualified individual on the basis of disability also includes

"utilizing standards, criteria, or methods of administration . . . that have the effect of discrimination on the basis of disability." 42 U.S.C. § 12112(b)(3).

52. Union Pacific discriminated against DeFries on the basis of disability in one or more of the following ways:

   a. Union Pacific's Fitness-for-Duty policies, including its use of the Light Cannon test, disproportionately and adversely impact qualified individuals with disabilities;

   b. Union Pacific uses qualification standards that screen out or tend to screen out qualified individuals with disabilities; and

   c. Union Pacific uses a Fitness-for-Duty evaluation process that screens out or tends to screen out qualified individuals with disabilities.

53. Union Pacific cannot show that such qualifications standards are job-related and consistent with business necessity.

54. Because Union Pacific violated 42 U.S.C. § 12112, DeFries has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. DeFries is also entitled to attorneys' fees and costs incurred in connection with these claims.

55. Union Pacific committed the above-alleged acts with reckless disregard or deliberate disregard for DeFries' rights and safety. As a result, DeFries is entitled to punitive damages.

## COUNT III
### *VIOLATION OF THE ADA*
### *FAILURE TO ACCOMMODATE*

56. Plaintiff incorporates the foregoing paragraphs by reference.

57. DeFries is a qualified individual with a disability within the meaning of the ADA.

58. To the extent that an accommodation was necessary, DeFries requested that Union Pacific provide him with a reasonable accommodation in the form of an alternate work position.

59. At all times relevant, a reasonable accommodation was available that would have allowed DeFries to return to work despite the work restrictions issued by Union Pacific.

60. Discriminating against a qualified individual with a disability includes "not making reasonable accommodations to the known physical or mental limitations of the otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]" 42 U.S.C. § 12112(b)(5)(A).

61. Union Pacific discriminated against DeFries by failing to provide DeFries with reasonable accommodation.

62. Because Union Pacific violated 42 U.S.C. § 12112, DeFries has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Plaintiff is also entitled to attorneys' fees and costs incurred in connection with these claims.

63. Union Pacific committed the above-alleged acts with reckless disregard or deliberate disregard for DeFries' rights and safety. As a result, DeFries is entitled to punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiffs pray for judgment against Union Pacific as follows:**

1. That the practices of Union Pacific complained of herein be determined and adjudged to constitute violations of the ADA;

2. An injunction against Union Pacific and its directors, officers, owners, agents,

successors, employees and representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

3. For an award of damages arising from loss of past and future income, emotional distress, and other compensatory damages in excess of $75,000.00;

4. Pre-judgment interest, as provided by law;

5. For Plaintiff's costs, disbursements and attorneys' fees pursuant to law;

6. For an award of punitive damages;

7. For all relief available under the ADA;

8. For such other and further relief available by statute; and

9. For such other and further relief as the Court deems just and equitable.

Date: March 26, 2021

*/s/ Gavin Barney*
**HILDEBRAND MCLEOD & NELSON**
**Anthony S Petru,** *pro hac vice forthcoming*
petru@hmnlaw.com
**Gavin Barney** (OR # 163382)
Email: barney@hmnlaw.com
350 Frank H. Ogawa Plaza, 4th Floor
Oakland, CA 94612
Tel: (510) 451-6732

**NICHOLS KASTER, PLLP**
**James H. Kaster**, *admitted pro hac vice*
Email: kaster@nka.com
**Lindsey E. Krause**, *admitted pro hac vice*
Email: lkrause@nka.com
80 South Eighth Street
4700 IDS Center
Minneapolis, Minnesota 55402-2242
Tel: (612) 256-3200

*Attorneys for Plaintiff Nicholas DeFries*