IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**NICHOLAS DeFRIES**,

        Plaintiff,

v.

**UNION PACIFIC RAILROAD COMPANY**,

        Defendant.

Case No. 3:21-cv-205-SI

**OPINION AND ORDER**

Anthony S. Petru and Gavin Barney, HILDEBRAND MCLEOD & NELSON LLP, 5335 College Avenue, Suite 5A, Oakland, CA 94618; and James H. Kaster and Lucas J. Kaster, NICHOLS KASTER, PLLP, 4700 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402. Of Attorneys for Plaintiff.

Donna Maddux, CONSTANGY, BROOKS, SMITH & PROPHETE LLP, 4800 Meadows Road, Suite 300, Lake Oswego, OR 97035; and Michael N. Westheimer, CONSTANGY, BROOKS, SMITH & PROPHETE LLP, 601 Montgomery Street, Suite 350, San Francisco, CA 94111. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

On April 7, 2025, the Court denied Defendant Union Pacific Railroad Company's ("Union Pacific") motions for summary judgment and motion to dismiss. ECF 108. Before the Court is Union Pacific's motion for reconsideration of that Opinion and Order. ECF 116.

**STANDARDS**

Rule 54(b) of the Federal Rules of Civil Procedure provides that any order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties'

PAGE 1 – OPINION AND ORDER

rights and liabilities." "The rule, however, does not address the standards that a district court should apply when asked to reconsider an interlocutory order, and the Ninth Circuit has not established a standard of review." *Unigestion Holding, S.A. v. UPM Tech., Inc.*, 614 F. Supp. 3d 823, 828 (D. Or. 2022). Courts in this circuit generally look to the standards under Rule 59(e). *See, e,g.*, *Mi Familia Vota v. Fontes*, 344 F.R.D. 496, 528 (D. Ariz. 2023); *Sessa v. Ancestry.com Operations. Inc.*, 713 F. Supp. 3d 997, 1001-02 (D. Nev. 2024); *cf. Apothio, LLC v. Youngblood*, 2025 WL 490141, at *2 (E.D. Cal. Feb. 13, 2025) (gathering cases). Under this standard, a court has discretion to reconsider if: (1) it is presented with newly discovered evidence; (2) it committed clear error or made an initial decision that was manifestly unjust; or (3) there is an intervening change in controlling law. *Ybarra v. McDaniel*, 656 F.3d 984, 998 (9th Cir. 2011); *see also Washington v. U.S. Dep't of Homeland Sec'y*, 598 F. Supp. 3d 1051, 1076 (E.D. Wash. 2020) ("[C]ourts in this circuit disfavor motions for reconsideration and deny them absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in controlling law." (quotation marks omitted)). Applying the Rule 59(e) standard to an interlocutory order, to establish entitlement to reconsideration based on newly discovered evidence, the movant must show that: (1) "the evidence was discovered after [the order at issue]," (2) "the exercise of due diligence would not have resulted in the evidence being discovered at an earlier stage," and (3) the newly discovered evidence is of such magnitude that production of it earlier would likely have changed the outcome of the [order]." *See Defs. of Wildlife v. Bernal*, 204 F.3d 920, 929 (9th Cir. 2000) (discussing the newly discovered evidence standard in the context of Rule 59(e)).

"A motion for reconsideration may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Marlyn*

*Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009) (emphasis in original) (quoting *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)). A motion for reconsideration thus "is not a mechanism to get a 'do over' to try different arguments or present additional evidence when the first attempt failed." Stephen S. Gensler & Lumen N. Mulligan, 2 *Fed. R. of Civ. P.*, *Rules and Commentary*, Rule 54 (2022); *see also Brown v. S. Nevada Adult Mental Health Servs.*, 2014 WL 2807688, at *2 (D. Nev. June 20, 2014) ("While a motion for reconsideration allows a party to bring a material oversight to the court's attention, it is not appropriate for a party to request reconsideration merely to force the court to think about an issue again in the hope that it will come out the other way the second time." (cleaned up)).

## BACKGROUND

Plaintiff Nicholas DeFries ("DeFries") worked as a locomotive conductor for Union Pacific from July 2004 through March 2018. DeFries has a color vision deficiency, which he contends is minor, does not limit any major life activity, and does not prevent him from performing his essential job functions, including discerning colors in railroad wayside signals. After failing the scientific "Ishihara" 14-plate color vision test and Union Pacific's proprietary secondary color vision field test ("CVFT"), the "Light Cannon" test, Union Pacific permanently removed DeFries from service as a locomotive conductor. DeFries brought claims alleging disparate treatment and disparate impact under the Americans with Disabilities Act ("ADA"), contending that Union Pacific "regarded" DeFries as disabled. He asserts that Union Pacific violated the ADA by using a proprietary CVFT that discriminated against DeFries because of his perceived color vision disability and that served to screen out persons like him, with perceived color vision deficits.

On February 6, 2023, the Court adopted the Findings and Recommendation of U.S. Magistrate Judge Stacie F. Beckerman, and granted summary judgment in favor of Union Pacific on the grounds that the statute of limitations stopped being tolled for DeFries after a class definition was narrowed when the motion for class certification was filed in *Harris v. Union Pacific Railroad Co.*, Case No. 8:16CV381329 (D. Neb), in which DeFries was a putative class member. ECF 76-77. In the *Harris* case, the district court certified a class only for the disparate treatment claim, although the Eighth Circuit later reversed that decision. *See Harris v. Union Pac. R.R. Co.*, 329 F.R.D. 616, 628 (D. Neb 2019), *rev'd* 953 F.3d 1030 (8th Cir. 2020).

On June 14, 2024, the Ninth Circuit reversed, issuing the mandate on July 31, 2024. ECF 81, 83. The Ninth Circuit concluded that the narrowed class definition continued to include color-vision plaintiffs like DeFries. ECF 81 at 29. Thus, the statute of limitations was tolled until the Eighth Circuit's reversal. *Id.* at 29-30.

After the Ninth Circuit's remand, the Court directed the parties to file a joint status report identifying, among other things, what remained to be litigated in the case. ECF 84. On August 26, 2024, the parties identified that Union Pacific's original motion for summary judgment remained pending for consideration on the merits, and was fully briefed. ECF 85 at 2-3.

On October 31, 2024, Union Pacific filed a supplemental brief in support of its motion for summary judgment. ECF 86. Union Pacific incorporated by reference its original briefing, highlighted cases either overlooked in or issued after its original briefing, raised a new argument—that Defries needed to follow the Federal Railroad Administration's regulatory appeals process to pursue his claim—and reiterated its argument that DeFries failed to show a genuine issue of material fact that he was a "qualified individual" under the ADA. The Court

PAGE 4 – OPINION AND ORDER

construed this as a supplemental motion for summary judgment because it raised a new argument. *See, e.g.*, ECF 88, 91. Union Pacific, however, also filed a motion to dismiss based on a similar argument raised in the supplemental summary judgment motion—that the Court did not have jurisdiction under the Hobbs Act to hear DeFries's claim. ECF 96.

In Union Pacific's original motion for summary judgment, it raised many arguments. ECF 49. In its reply, however, Union Pacific argued only: (1) as a field test, the Light Cannon test was not subject to scientific validation and DeFries's challenges to its validity are ineffectual;[1] (2) DeFries fails to create a genuine issue of fact that he is a "qualified individual" under the ADA; (3) Union Pacific prevails on its *Albertson's* defense; (4) Union Pacific prevails on its business necessity defense, and (5) Union Pacific prevails on its direct threat defense. The Court addressed these arguments in its Opinion and Order resolving the summary judgment motion.

## DISCUSSION

Union Pacific argues that reconsideration is warranted because two court opinions issued after the Court's Opinion and Order show that the Court committed clear error in denying Union Pacific's motions. Union Pacific relies on two nonbinding opinions, *Turner v. BNSF Railway Co.*, 138 F.4th 224 (5th Cir. 2025), and *Donahue v. Union Pacific Railroad Co.*, 2025 WL 1397505 (N.D. Cal. May 13, 2025). Union Pacific's motion asserts clear error on three grounds: (1) DeFries cannot show an issue of fact that he is a "qualified individual" under the ADA; (2) DeFries abandoned his disparate impact claim on appeal and thus it should no longer

---

[1] DeFries raised arguments challenging the validity of the Light Cannon test in responding to Union Pacific's arguments about whether DeFries could show that he was a "qualified individual" under the ADA and whether Union Pacific could prevail on its defense under the doctrine established in based on *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555 (1999).

be a part of the case; and (3) DeFries fails to show an issue of fact on pretext under the *McDonnell-Douglas* burden shifting framework. The Court addresses each argument in turn.

## A. Qualified Individual

Union Pacific relies on *Turner* to argue that DeFries cannot show he is a qualified individual because he failed the Ishihara and Light Cannon tests. This is the same analysis that the district court in *Turner* applied and this Court rejected in the Opinion and Order. The Fifth Circuit's analysis is not materially different from the district court's analysis, but is materially different from the Ninth Circuit's approach.

The Fifth Circuit concluded in *Turner* that the railroad in that case, BNSF's, "hands were tied" with respect to employees who failed its secondary field test. 138 F.4th at 230. The panel "refuse[d] to force employers into a choice between the rock of ADA liability and the hard place of regulatory violation." *Id.* at 231. The Court disagrees, however, that railroads like BNSF and Union Pacific have their "hands tied" with respect to secondary field testing. They have the authority under the regulations to develop their own secondary field tests, or use a completely different type of secondary test. This is unlike the situation in *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555 (1999), which was cited by both Union Pacific and the Fifth Circuit in *Turner*. In *Albertson's*, the regulation "provided a single, clear, substantive standard for the visual acuity of truck drivers in interstate commerce." *Mills v. Union Pac. R.R. Co.*, 2024 WL 185246, at *10 (D. Idaho Jan. 16, 2024). It did not give the regulated entities the broad discretion in crafting visual acuity tests that Union Pacific has in deciding both the type of secondary test and creating the specific test itself. An employer forced to use a specific test and face ADA liability or do not use it and face a regulatory violation is vastly different from Union Pacific, who is choosing to use a secondary field test and then developing its own test.

Additionally, the Ninth Circuit has explained the difference between "qualification standards" and "essential functions" in resolving a dispute involving Department of Transportation ("DOT") required hearing tests:

> As noted earlier, a job's "essential functions" are "fundamental job duties of the employment position . . . not includ[ing] the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1); *see also* id. § 1630.2(n)(2)-(3) (elaborating on reasons and evidence relevant to an essential function showing). "Essential functions" are not to be confused with "qualification standards," which an employer may establish for a certain position. Whereas "essential functions" are basic "duties," 29 C.F.R. § 1630.2(n)(1), "qualification standards" are "personal and professional attributes" that may include "physical, medical [and] safety" requirements. *Id.* § 1630.2(q). The difference is crucial.
>
> The statute does not require that a person meet each of an employer's established "qualification standards," however, to show that he is "qualified." And, indeed, it would make little sense to require an ADA plaintiff to show that he meets a qualification standard that he undisputedly *cannot* meet because of his disability and that forms the very basis of his discrimination challenge.

*Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 991 (9th Cir. 2007) (emphasis and alterations in original).

Union Pacific argues that the ability to discern color railway signals is an "essential function." The *Light Cannon test*, however, is not a test required under federal regulations. The test is a discretionary medical or safety test implemented by Union Pacific at its choosing. And as explained by the Ninth Circuit, an ADA plaintiff cannot be deemed not "qualified" under the ADA for failing the very qualification standard he is challenging. *See id.*; *see also id.* n.6 (explaining that in addition to the plain text, the legislative history "states that the qualification standard section of the ADA was meant to apply to 'a person with a disability [who] applies for a job and meets all selection criteria *except one that he or she cannot meet because of a disability*'" (emphasis added in *Bates*) (quoting S. Rep. No. 101-116, at 37 (1989)).

PAGE 7 – OPINION AND ORDER

The Court also notes that in *Donahue*, the case Union Pacific relies on for the other two aspects of its motion for reconsideration, which is from a jurisdiction in the Ninth Circuit, the district court evaluated whether the plaintiffs were qualified individuals the same as this Court in its Opinion and Order. The court in *Donahue* explained that "[h]aving reviewed the record as a whole, the Court finds plaintiffs have submitted sufficient evidence to raise a genuine issue as to the validity of the Light Cannon." *Donahue*, 2025 WL 1397505, at *6. The court then looked at whether there was other evidence in the record creating an issue of fact as to the color vision acuity of each plaintiff (and thus whether that plaintiff was qualified). *Id.* The *Donahue* court found that for two plaintiffs there was no such evidence and for one plaintiff (Donahue) there was evidence that he passed Ishihara scientific color vision tests in private practice. *Id.*

This court did the same—discussing (1) evidence creating an issue of fact regarding the Light Cannon's efficacy and (2) DeFries's DOT color vision tests and proffered expert opinion testimony as to his color vision acuity as creating an issue of fact regarding whether he is a qualified individual. *See, e.g.*, ECF 108 at 11-12, 26-29. Thus, under Ninth Circuit law, the Court does not find the opinion in *Turner* persuasive authority and grounds for reconsideration.

**B. Disparate Impact Claim**

Union Pacific argues that the Court failed to address an issue decided by the district court in *Donahue*—that the *Donahue* plaintiffs could not pursue their disparate impact claim because the *Donohue* appeal was reversed on the same grounds as the *DeFries* appeal, and DeFries appealed only his disparate treatment claim, thereby abandoning his disparate impact claim. *Donahue*, 2025 WL 1397505, at *2. DeFries responds that this argument is inappropriate on reconsideration because Union Pacific could have raised it before the Court issued its Opinion and Order. DeFries offers no response on the merits.

The Court acknowledges that Union Pacific (and DeFries) failed to alert the Court that DeFries abandoned his disparate impact claim on appeal. This is particularly egregious because the Court specifically ordered the parties to notify the Court what remained to be litigated in the case after the Ninth Circuit's remand, and accepted two supplemental summary judgment briefs from Union Pacific. And although Union Pacific could have raised this argument sooner, it is more unjust to allow DeFries to continue prosecuting a claim that he voluntarily abandoned than to punish Union Pacific for failing to bring that abandonment to the attention of the Court in a more timely manner. It also serves judicial efficiency and conservation of the parties' resources to dispose of this claim now, because Union Pacific could file a motion in limine or other pretrial motion based on DeFries's abandonment of this claim and the ultimate outcome would be the same. The Court thus grants this aspect of Union Pacific's motion and grants summary judgment in favor of Union Pacific on Plaintiff's disparate impact claim.

## C. Pretext

Union Pacific's final argument is that the Court failed to address the *McDonnell-Douglas* burden shifting framework, particularly Plaintiff's failure to show an issue of fact on pretext, whereas the court in *Donahue* reached this issue on the merits, finding in favor of the railroad. The problem with this argument by Union Pacific is that it raised the *McDonell-Douglas* burden shifting framework in its opening motion for summary judgment and argued that DeFries could not show his prima facie case or that Union Pacific's conduct was pretextual. DeFries responded by arguing that the *McDonell-Douglas* burden shifting framework did not apply because Union Pacific's had a facially discriminatory policy. In its reply, Union Pacific abandoned its argument about pretext and did not respond to DeFries's argument about Union Pacific's purported facially discriminatory policy. Instead, Union Pacific focused its arguments solely on whether DeFries

could establish that he was a qualified individual, and whether Union Pacific could prove its three affirmative defenses.

Generally, the failure to respond to an argument on its merits is grounds for deeming that argument abandoned or conceded. *See Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 & n.7 (N.D. Cal. 2013) (collecting cases holding that a party concedes an argument by failing to respond to it); *Angeles v. U.S. Airways, Inc.*, 2013 WL 622032, at *4 (N.D. Cal. Feb. 19, 2013) ("The failure to respond amounts to a concession."). This applies in failing in a reply brief to respond to an argument raised in a response brief. *See Palmer v. Cognizant Tech. Sols. Corp.*, 2022 WL 18214014, at *31 (C.D. Cal. Oct. 27, 2022) ("Plaintiffs do not respond to this contention in their Reply, which constitutes a concession of that argument."); *Nguyen v. Nissan N. Am., Inc.*, 487 F. Supp. 3d 845, 857 (N.D. Cal. 2020) (concluding that the party's failure to address counterarguments in reply constituted abandonment of position taken in initial brief). Thus, Union Pacific abandoned or conceded its arguments not raised in its reply, including its argument about pretext. Nor did Union Pacific raise that argument in either supplemental brief filed after remand by the Ninth Circuit.

Moving for reconsideration on abandoned arguments because a district court in a different case issued a ruling on similar grounds is not a proper basis for reconsideration. Union Pacific chose to abandon those arguments. The Court issued a ruling on the merits on all the arguments that Union Pacific pursued in its original reply and in its supplemental briefs and new motion to dismiss. Union Pacific does not get to avoid its voluntary decision to abandon its pretext argument no more than DeFries gets to avoid his voluntary abandonment of his disparate impact claim. The Court denies this aspect of Union Pacific's motion.

## CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Defendant Union Pacific's Motion for Reconsideration, ECF 116. Upon reconsideration, the Court grants summary judgment against DeFries's disparate impact claim. The Court denies the remaining aspects of Defendant's motion.

**IT IS SO ORDERED**.

DATED this 31st day of July, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge